Theodore V. H. Mayer
Vilia B. Hayes
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
CAROLYN S. CROFT,

                Plaintiff,      **No.:** 1:08-cv-03078-GBD

      -against-

MERCK & CO., INC.,

                Defendant.
------------------------------x

## DEFENDANT'S COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY, AND IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Merck & Co., Inc. ("Merck") respectfully submits this combined reply memorandum in support of its motion to stay this action pending its transfer to the multidistrict litigation ("MDL") proceeding established for Vioxx® cases, and in opposition to Plaintiff's Cross-Motion to Remand.

As set forth below, the Court should stay this case and defer ruling on Plaintiff's motion to remand pending the transfer of this case to MDL proceeding No. 1657, *In re Vioxx Marketing, Sales Practices and Products Liability Litigation* ("MDL-1657"). This is one of numerous cases that have been filed against Merck concerning the prescription drug Vioxx®. As

60271516_1

many courts have recognized, staying an action pending the MDL Panel's transfer of the case best achieves the objectives of 28 U.S.C. § 1407, namely judicial economy and consistency of rulings.

Plaintiff opposes Merck's motion to stay on the grounds that she has cross-moved for remand, and that this Court, rather than the MDL court, should decide that motion. However, Plaintiff's motion to remand merely confirms the appropriateness of staying this case pending MDL transfer so that the MDL judge can rule on all pretrial motions – including those raising jurisdictional issues – in a coordinated manner. The statutory objectives of the MDL process are best served by allowing Judge Eldon Fallon, who is presiding over MDL-1657, to rule on overlapping remand motions for all Vioxx cases across the country.

Should the Court decide to reach the merits of Plaintiff's motion to remand, it should be denied because Merck removed the case in a timely manner upon the dismissal of the only non-diverse defendant, Pfizer, Inc. ("Pfizer"), from the case. While Plaintiff argues that she only dismissed Pfizer from the case because of a negative ruling by a federal judge presiding over the Bextra and Celebrex MDL proceeding, the procedural background of the case and nature of that ruling belie that claim. Because Plaintiff never intended to proceed against Pfizer, an equitable extension of the one year removal deadline should be applied to this case.

For these reasons, Merck respectfully requests that the Court stay this case pending transfer to MDL-1657 or, alternatively, deny Plaintiff's motion to remand.

## ARGUMENT

The gravamen of Plaintiff's opposition to Merck's Motion to Stay – that her motion to remand should be heard by this Court – is contrary to the direction of the Judicial Panel on Multidistrict Litigation ("JPML" or "MDL Panel"), the Vioxx MDL judge, and scores

of federal courts across the country. As these courts have all recognized, the best course of action is to stay such cases and allow plaintiffs' motion to be decided in the MDL. If the Court does consider Plaintiff's remand motion, it should be denied because the case was properly removed and the one year removal deadline should be equitably extended.

I.  THE COURT SHOULD STAY THIS CASE AND DEFER CONSIDERATION OF PLAINTIFF'S REMAND MOTION PENDING MDL TRANSFER.

The majority of courts (including the MDL court presiding over the Vioxx coordinated proceeding) have recognized that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation, including the consideration of remand motions, pending transfer to an MDL proceeding. For this reason, federal courts around the country, including a number in New York, have **stayed more than 3,400 Vioxx-related cases, including nearly 500 where plaintiffs sought remand**. *See, e.g., Aguilar v. Merck & Co., Inc. et al.*, No. 05-CV-4865 (SJ), slip op. (E.D.N.Y. Nov. 22, 2005) (Attached to the April 24, 2008 Declaration of Vilia B. Hayes ("Hayes Decl.") as Exhibit A) (staying case despite motion to remand, noting this would promote judicial economy, minimize the risk of inconsistent rulings, and would not prejudice plaintiff); *Krieger v. Merck & Co., Inc.*, No. 05-CV-6338L, 2005 WL 2921640, at *1-2 (W.D.N.Y. Nov. 4, 2005) (staying case despite motion to remand, noting that fraudulent joinder issues were better determined by the MDL court); *North v. Merck & Co., Inc.*, No. 05-CV-6475L, 2005 WL 2921638, at *1-2 (W.D.N.Y. Nov. 4, 2005) (same). *See also* June 23, 2005 Status Conference Tr. at 21 (Hayes Decl. Ex. B) (J. Fallon) ("There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. The [r]ule of [l]aw is really based on consistency. If different decisions are made by numerous judges, then you have no

consistency and no predictability . . . . It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.").

These decisions are in accord with the majority view. As one court put it, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel." *Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001). In fact, the JPML similarly suggests to transferor courts that they should defer ruling on remand motions in order to ensure uniform treatment of recurring jurisdictional issues. (*See, e.g.*, Letter from JPML to Hon. Ricardo H. Hinojosa ("wait[ing] until the Panel has decided the transfer issue . . . may be especially appropriate if the [remand] motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.") (Hayes Decl. Ex. C.) *See also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where the "jurisdictional issue in question is easily capable of arising in [more than one court,] [c]onsistency as well as economy is . . . served" by transferring and consolidating cases as to which remand motions are pending); *Med. Soc'y v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) ("there are significant economies in having a single court decide a jurisdictional question which has arisen and presumably will continue to arise in cases around the nation."); *Colf v. Regeneration Techs., Inc.*, No. 06-CV-6604L, 2007 U.S. Dist. LEXIS 2095, at *1-2 (W.D.N.Y. Jan. 11, 2007) ("a stay pending final decision on transfer by the JPML is warranted in order to conserve judicial resources, to avoid duplicative litigation, and to prevent hardship and inequity to the parties . . . plaintiffs' pending motion to remand this case to state court does not act as a bar to transfer."); *Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002) ("judicial

economy is best served by staying this litigation pending a resolution of the conditional order to transfer. Granting a stay . . . avoids the possibility of inconsistent pretrial rulings [because the MDL judge] . . . can decide for all cases involved in the Baycol® MDL whether the jurisdictional requirements are satisfied."); *Michael v. Warner-Lambert Co.*, No. 03-CV-1978 DMS(RBB), 2003 U.S. Dist. LEXIS 21525, at *9-10 (S.D. Cal. Nov. 20, 2003) (staying four cases with remand motions pending transfer to MDL court).[1]

Judge Fallon has before him a number of pending remand motions raising a variety of issues which he has stated he intends to address in an organized fashion at the appropriate time. The course of this litigation has made clear the utility of central coordination in the MDL court. Merck recently removed eleven cases, commenced by the same law firm, to this Court. In each case, the Pfizer Defendants were originally named as defendants and were subsequently dismissed. In eight of these eleven cases, plaintiff's counsel has opposed Merck's motion for a stay and filed a cross-motion for remand. Judge Fallon can best decide – in a coordinated manner – whether these cases were properly removed to federal court.

Because this case presents the same factual and legal questions as other cases removed to federal court, the best course is to stay all proceedings pending MDL transfer and allow Judge Fallon to resolve these issues in a coordinated manner.

---

1. Although Plaintiff points to two cases where courts decided not to stay cases in the process of being transferred to MDL proceedings (*see* Pl. Mem. at 5-6), it is clear that the majority view – and the preference of this MDL court – is to stay all proceedings and defer remand motions to the transferee judge to allow him to resolve them in a coordinated and consistent fashion. In addition, Plaintiff's reliance on Rule 1.5 of the MDL Panel (*see* Pl. Mem. at 6) is irrelevant because Merck does not deny that the Court has jurisdiction. Rather, Merck's point is that the objectives of judicial economy and consistency are best met by staying cases like Plaintiff's.

## II. IN THE ALTERNATIVE, THE COURT SHOULD DENY PLAINTIFF'S REMAND MOTION.

If the Court does consider the merits of Plaintiff's motion, it should be denied, because the case was properly removed to federal court.

This case was originally filed in New York state court against not only Merck but also Pfizer, a New York corporation, Pharmacia Corporation and Pharmacia & Upjohn Company (hereafter referred to as "Pfizer" or the "Pfizer Defendants"). The case was not removable because Plaintiff is a New York resident, and because the case was filed in New York, the home state of one of the defendants.

On March 6, 2008, a Stipulation of Dismissal with Prejudice Against Pfizer Defendants, agreed to by Plaintiff, was filed in the Supreme Court of the State of New York, County of New York. (Hayes Decl. Ex. D.) Thus, as of that date, the sole remaining defendant in the case was Merck, a New Jersey corporation, and the case became removable. Pursuant to 28 U.S.C. § 1446(b), Merck timely removed this case to federal court on March 26, 2008, within 30 days of the dismissal.

Section 1446(b) generally requires that removal of diversity cases be accomplished within "1 year after commencement of the action." 28 U.S.C. § 1446(b). However, this Court and others have found that where plaintiffs have avoided removal through apparent manipulation of the removal statute, an equitable extension of the one-year period for removal is appropriate. *See In re Rezulin Prods. Liab. Litig.*, No. 02-Civ-6827 (LAK), 2003 U.S. Dist. LEXIS 26528, at *7-8 (S.D.N.Y. June 4, 2003) ("an equitable exception to the one-year time limit imposed by Section 1446(b) is warranted where, as here, the circumstances suggest that the plaintiff acted tactically to avoid removal and the interests of justice favor removal.").

Plaintiff argues that "Merck has failed to demonstrate that plaintiff has not pled a cause of action against Pfizer." (Pl. Mem. at 5.) However, Merck is not arguing that Plaintiff did not plead a cause of action against the Pfizer Defendants in her original complaint. Instead, Merck argues that an equitable extension is proper because Plaintiff never pursued – and never intended to pursue – her claims against the Pfizer Defendants. As the Fifth Circuit has recognized, "[s]trict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction." *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003) (noting that Congress did not intend the one-year rule "to allow plaintiffs to circumvent [removal] altogether"). Accordingly, "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in §1446(b) be extended." *Id.* at 428-429. *See also Shiver v. Sprintcom, Inc.*, 167 F. Supp. 2d 962, 963 (S.D. Tex. 2001) (denying plaintiff's motion to remand action to state court where defendant's attempt at removal came more than one year after commencement of the action and holding that "the one-year limitation in § 1446(b) is not absolute, but rather, subject to equitable exceptions"); *Chamberlain v. Amrep, Inc.*, No. 3:04-CV-1776-B, 2004 U.S. Dist. LEXIS 23384, at *6 (N.D. Tex. Nov. 18, 2004) (denying plaintiff's motion to remand and noting that removal deadlines may be subject to equitable exceptions); *Ardoin v. Stine Lumber Co.*, 298 F. Supp. 2d 422, 425, 428 (W.D. La. 2003) (following *Tedford* and concluding that plaintiffs deliberately included non-diverse defendants until the one-year limit of § 1446(b) had passed in an effort to prevent removal); *Davis v. Merck & Co., Inc.*, 357 F. Supp. 2d 974, 979 (E.D. Tex. 2005) ("forum manipulation should not be encouraged, and an equitable extension of the one-year limitation on removal

should be granted" where plaintiff did not attempt to pursue her claims against a non-diverse defendant).

In this case, Plaintiff's actions prior to dismissing the Pfizer Defendants demonstrate that she had no intention of prosecuting her claims against the non-diverse defendants. Plaintiff has done nothing to suggest that she ever had a colorable basis to pursue a claim against the Pfizer Defendants, and Plaintiff has taken no action to prosecute this case against the non-diverse defendants. For example, Plaintiff failed to comply with a case management order pursuant to which she was required to produce to Pfizer a Plaintiff Fact Sheet, medical authorizations and other responsive documents. (Hayes Decl. Ex. E.) Pursuant to Paragraph 5 of that order, Plaintiff was required to produce these materials to counsel for Pfizer within 60 days of the entry of the order. The order was signed on August 14, 2006. However, Plaintiff never produced the required documents to Pfizer any time during the following year and a half, before dismissing her claims against the Pfizer Defendants in March 2008.

Notably, the policy underpinnings of the one-year removal limitation are not implicated by this case. As this Court observed in *In re Rezulin Products Liability Litigation*, "the legislative history of the [removal] statute reflects Congress' intention that the one-year limit effect only a '*modest* curtailment in access to diversity jurisdiction' to promote comity and conservation of judicial resources, not to permit wholesale circumvention of diversity jurisdiction by strategic pleading." 2003 U.S. Dist. LEXIS 26528, at *7 (quoting H.R. REP. No. 100-889, at 72 (1988)) (emphasis in original). Moreover, Congress' desire to reduce "the opportunity for removal after substantial progress has been made in state court," *id.*, is simply not an issue in the instant case. As set forth above, no substantial progress has been made in state court – indeed, virtually no progress has been made at all. Removal at this time would

therefore not trigger Congress' concerns with the waste of judicial resources. *Ardoin*, 298 F. Supp. 2d at 428 (federal court, though faced with state court's "numerous discovery rulings," found that "congressional concerns behind the one year limitation [were] not at issue" because "[a]ny discovery that has been conducted thus far, would be transferable here"). Indeed, in the present case, **removal** would further judicial economy as this case could be transferred to MDL-1657 where it can be coordinated with thousands of other Vioxx cases. *In re Rezulin*, 2003 U.S. Dist. LEXIS 26528, at *10 ("the interests of justice are promoted in this case by applying an equitable exception to the one-year time limit of Section 1446(b) to permit defendants to participate in the consolidated multi-district litigation underway in this Court").

In arguing that the one-year time limit should not be extended, Plaintiff does not proffer any evidence that she took any steps to prosecute her claim against Pfizer and apparently concedes that she did not. Instead, Plaintiff's only argument is that she dismissed the Pfizer Defendants from the case as a result of an expert witness ruling by Judge Breyer in the Bextra/Celebrex federal MDL proceeding, filed on November 19, 2007, holding that there was not reliable evidence that ingestion of Celebrex at a dose of 200 mg per day causes heart attacks or strokes. (Pl. Mem. at 3, *citing In re Bextra and Celebrex Mrtg. Sales Practice and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1169 (N.D. Cal. 2007).) Plaintiff's implication that she intended to pursue her claims against the Pfizer Defendants until Judge Breyer's order was issued fails for multiple reasons.

First, Plaintiff suggests that the issuance of the November 19, 2007 order somehow obviated the necessity for her to submit her Plaintiff Fact Sheet to Pfizer. (*See* Pl. Mem. at 3-4.) Plaintiff states that the expert witness ruling came within days of an order from the magistrate judge ordering her to produce her Plaintiff Fact Sheet within 21 days or face

dismissal. (*Id.*) However, neither order was issued until more than a year after Plaintiff was required to submit a Plaintiff Fact Sheet to Pfizer pursuant to CMO 6. Therefore, Plaintiff had already demonstrated her lack of interest in proceeding against Pfizer by blatantly failing to take any action in the case with regard to Pfizer, including production of the required Plaintiff Fact Sheet – for the more than a year prior to the issuance of Judge Breyer's order.

Second, Judge Breyer's opinion only excluded certain general expert testimony in the federal MDL proceeding that ingestion of Celebrex at a 200 mg dose caused heart attacks (myocardial infarctions) or strokes. (Pl. Mem. at 3, *citing In re Bextra*, 524 F. Supp. 2d at 1169.) However, Plaintiff has not alleged that she suffered a myocardial infarction or a stroke. Plaintiff's Complaint did not specify an injury, simply conclusively stating that Plaintiff "sustained severe injuries" and "great pain and suffering." (Compl., ¶¶ 18, 19.) The Plaintiff Profile Form ("PPF") submitted to Merck states that the injuries Plaintiff suffered were "chest pains secondary to coronary artery disease, ischemia, requiring stent placement." (Hayes Decl. Ex. F, Section I.C.(1)(a).) Since Plaintiff did not allege that she suffered a heart attack or stroke, Judge Breyer's ruling is irrelevant to her ability to prove her claims against Pfizer.

Third, the limited amount of Celebrex Plaintiff received further suggests that Plaintiff had no real intention of ever proceeding against Pfizer. According to the records attached to the affirmation in support of their motion, Plaintiff was given an 8 day sample of Celebrex on August 19, 1999, and a 28 day sample on October 6, 1999. On the other hand, Plaintiff stated on the PPF that she took Vioxx from July 2000 through December 2001, although records substantiating usage for the entire duration were not provided. (Hayes Decl. Ex. F, Section IV.B.) The disparity in the alleged usage of the two drugs, coupled with Plaintiffs'

dismissal of the Pfizer Defendants from the case, further supports the inference that Plaintiff never intended to proceed against the Pfizer Defendants.

In sum, there is no evidence that Plaintiff ever intended to proceed against the Pfizer Defendants. Plaintiff has taken ***no action*** with respect to the Pfizer Defendants in this case, and dismissed the claims against the Pfizer Defendants after the one-year time limit on removal had passed. Plaintiff thus has engaged in the type of "strategic behavior" that warrants equitable extension of the one-year deadline for removal. *See Davis*, 357 F. Supp. 2d at 979 (granting an equitable extension of the one year time period to remove where plaintiff never prosecuted the claim against non-diverse co-defendant, "lead[ing] to the conclusion that she never intended to pursue, or at the least voluntarily abandoned, her claims against [the co-defendant]").

## CONCLUSION

For the foregoing reasons, and the reasons stated in Merck's Motion to Stay All Proceedings Pending Transfer Decision By the Judicial Panel on Multidistrict Litigation, Merck respectfully requests that this Court grant its motion to stay all proceedings in this case pending a decision on transfer to the MDL proceeding that has been established in the Eastern District of Louisiana. In the alternative, Merck requests that the Court deny Plaintiff's cross-motion to remand.

DATED:   New York, New York
         April 24, 2008

>                                Respectfully submitted,
>
>                                HUGHES HUBBARD & REED LLP
>
>
>                                By: /s/ Vilia B. Hayes
>                                    Theodore V. H. Mayer
>                                    Vilia B. Hayes
>                                    Robb W. Patryk
>
>                                One Battery Park Plaza
>                                New York, New York  10004-1482
>                                (212) 837-6000
>
>                                *Attorneys for Defendant Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2008, I caused a copy of the foregoing DEFENDANT'S COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY, AND IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND to be served via first-class mail, postage prepaid, on the following:

Ronald R. Benjamin, Esq.
LAW OFFICES OF RONALD R. BENJAMIN
126 Riverside Drive, P.O. Box 607
Binghamton, New York 13902

The above address has appeared on the prior papers in this action as the office address of the attorneys for Plaintiff.

Deponent is over the age of 18 years and not a party to this action.

I further certify under penalty of perjury that under the laws of the United States of America the foregoing is true and correct.

Executed on April 24, 2008

_____
Jennifer Alpern Hecht